IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CELEDONIA AMACKER and JOSEPH AMACKER,<br><br>          Plaintiffs,<br><br>     v.<br><br>BANK OF AMERICA, a national association; THE BANK OF NEW YORK MELLON, as trustee for THE CERTIFICATE HOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2005-58 MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2005-58, a business entity; and Does 1 through 100, inclusive,<br><br>          Defendants. | No. C 13-3550 CW<br><br>ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS (Docket Nos. 23 and 31), BANK OF NEW YORK MELLON'S MOTION TO STRIKE (Docket No. 33) and GRANTING PLAINTIFFS LEAVE TO AMEND |

═══════════════════════════════/

     Plaintiffs Celedonia Amacker and Joseph Amacker assert various mortgage-related claims against Defendants Bank of America, N.A. (BOA) and Bank of New York Mellon (BNYM).  Both Defendants move separately to dismiss Plaintiffs' first amended complaint (1AC) in its entirety.  BNYM also moves to strike portions of the 1AC.  Plaintiffs have filed an opposition to both motions to dismiss.  Each Defendant has filed a reply.  The Court took the motions under submission on the papers.  Having considered the arguments presented by the parties, the Court GRANTS both Defendants' motions and GRANTS Plaintiffs leave to amend.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

BACKGROUND

I.   Facts

The following facts are taken from the 1AC and certain documents of which the Court takes judicial notice.[1]

In October 2005, Plaintiffs obtained a loan funded by Countrywide Home Loans, Inc. in the amount of $624,000.  Request for Judicial Notice (RFJN), Ex. B.  This loan refinanced a prior loan secured by a deed of trust encumbering the real property located at 6589 Fountaine Avenue, Newark, California.  Id.  The deed of trust identifies America's Wholesale Lender as the lender, CTC Foreclosure Services Corp. as the Trustee, and Mortgage Electronic Registration System (MERS) as the beneficiary.  RFJN, Ex. A.

The deed of trust, which Plaintiffs signed, included an Adjustable Rate Rider.  RFJN, Ex. B.  The rider provided for an adjustable interest rate starting at two percent for approximately the first fifty days of the loan.  Id.  After that, the interest rate was set to vary monthly according to a set margin above a variable interest-rate index.  Id.  Plaintiffs allege that between October 2005 and 2008, their monthly loan payment increased from

---

[1] Defendants ask, and there is no record of Plaintiffs opposing, that the Court take judicial notice of various recorded documents associated with Plaintiffs' purchase of the property, the refinancing loan secured by a deed of trust, and subsequent appointment of trustees and beneficiaries: (A) October 2005 Deed of Trust; (B) May 2008 Notice of Default and Election to Sell under Deed of Trust; (C) November 2009 Notice of Rescission of Declaration of Default and Demand for Sale and Notice of Default; (D) November 2011 Assignment of Deed of Trust; (E) March 2013 Substitution of Trustee; and (F) March 2013 Notice of Default and Election to Sell under Deed of Trust.  Request for Judicial Notice, Exs. A-E.  "[A] court may take judicial notice of 'matters of public record.'"  Sami v. Wells Fargo Bank, 2012 WL 967051, at *4 (N.D. Cal.) (citation omitted).  The Court GRANTS this request.

approximately $2,100 to $3,000.  1AC ¶ 13.  Because Plaintiffs were only paying the minimum payment, which did not always cover the interest accruing on the loan, the principal amount they owed on the loan increased over time.  RFJN, Ex. B.  This is known as "negative amortization."  Id.  Plaintiffs allege that they were not aware when they entered into the loan agreement that the principal could negatively amortize.  1AC ¶ 5, Pls.' Opp. 1.

Plaintiffs allege that, in 2008, while current on their payments, they began to pursue a loan modification with Countrywide.  1AC ¶ 14.  They claim that, during conversations with Countrywide, they were told that in order to obtain a loan modification, they must first default on their loan.  Id. Plaintiffs also allege that they were told that they would not face a foreclosure while they were pursuing a loan modification. Id.

Because they felt they needed to modify their loan agreement, Plaintiffs stopped paying on their loan.  Id.  In May 2008, ReconTrust Company, as the agent for the beneficiary, recorded a Notice of Default and Election to Sell Under the Deed of Trust. RFJN, Ex. B.  The notice stated that Plaintiffs were $16,556.72 in arrears.  Id.  In late 2008, Bank of America acquired Plaintiffs' loan.[2]  1AC ¶ 16.  Plaintiffs continued their loan modification negotiations with BOA.  Id.

Plaintiffs allege that, around September 2009, BOA representatives advised them that their property was subject to

---

[2] Bank of America was the successor by merger of CountryWide Home Loans.  See RFJN Ex. E.

United States District Court
For the Northern District of California

imminent foreclosure.  Id. at ¶ 17.  Plaintiffs claim they then retained the assistance of the Housing and Economic Rights Advocates (HERA).  Id.  After they retained HERA, Plaintiffs were interviewed by the San Francisco Chronicle, which then published an article featuring Plaintiffs.  Id.

According to Plaintiffs, soon after the news article was published, a BOA representative named Tammy Tipton contacted them to "personally assist with [their] account."  Id.  During the conversation, Plaintiffs allege, Ms. Tipton told Joseph Amacker that she "was working to help keep him keep his home" and would provide a modification that would be "really good" for Plaintiffs.  Id. at ¶ 18.  Plaintiffs allege that they received a written copy of the proposed modification a few days later.  Id. at ¶ 19.

The proposed modification provided an initial interest rate of 3.5% for the first five years and a monthly payment of $2,981.58.  Id. at ¶ 20.  After the first five years, the interest rate would increase to 5.125%.  Id.  Plaintiffs were unhappy with the terms of the proposed modification.  Id. at ¶ 27.  On the same day Plaintiffs received the proposed loan modification, Plaintiffs allege, Ms. Tipton called them and said, "Let me tell you that this is just to get you started.  Once the dust settles, we will definitely re-modify you and get you a better loan in the future, in about two years."  Id.  Plaintiffs allege that, prior to receiving the 2009 modification, they were "ready to take legal action."  Id. at ¶ 20.  Nevertheless, Plaintiffs accepted the modification, even though they thought the terms of the modification were "unfavorable."  Id. at ¶ 20.  They allege that they felt they had no other choice.  Id.  Plaintiffs allege they

4

United States District Court
For the Northern District of California

have not heard from Ms. Tipton again, despite attempts to reach her.  Id. at ¶ 21.

In November 2009, on behalf of the beneficiary, ReconTrust recorded a notice of rescission of declaration of default and demand for sale and notice of default.  RFJN, Ex. C.

In April 2011, Plaintiffs contacted BOA to discuss modifying their loan.  Id. at ¶ 22.  Plaintiffs were told to submit a loan modification application, which they did immediately.  Id. Plaintiffs spoke to a BOA representative several times, each time reiterating what they allege Ms. Tipton told them in 2009.  Id.

In November 2011, MERS recorded an assignment of deed of trust to BNYM, assigning "all beneficial interest . . . together with the note(s) and obligations . . . and the money due and to become due."  RFJN, Ex. D. [3]   Bank of America continued as the loan servicer.  BNYM Mot. Dismiss 1.

Plaintiffs allege that, in early 2012, Anita Lewis, a BOA representative, told them there was no record of Ms. Tipton's assurance that BOA would modify their loan.  1AC ¶ 23.  At that time, Plaintiffs were notified that their loan modification application had expired and they were required to file a new application.  Id.  They do not allege that they did so, or that their completed application was then denied.

In March 2013, BYNM recorded a substitution of trustee, replacing CTC Foreclosure Services with ReconTrust.  RFJN, Ex. E.

_____

[3]Plaintiffs allege that BOA transferred the loan to BNYM in February 2013.  1AC ¶ 24.  The Assignment of the Deed of Trust indicates the transfer happened in 2011, as alleged by the Defendants.  RFJN, Ex. D.

On March 19, 2013, BYNM recorded a notice of default and election to sell under deed of trust.  RFJN, Ex. F.

Plaintiffs filed suit in July 2013 and filed their amended complaint in September 2013.  Plaintiffs' 1AC alleges claims for (1) fraud (against Defendant BOA); (2) promissory estoppel (against both Defendants); (3) negligent misrepresentation (against both Defendants); (4) violation of the Uniform Fraudulent Transfer Act (against both Defendants); and (5) violation of Business and Professions Code section 17200 et seq. (against both Defendants).

LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  The plaintiff must proffer "enough facts to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. Metzler Inv. GMBH v. Corinthian Colls., Inc., 540 F.3d 1049, 1061 (9th Cir. 2008).  The court's review is limited to the face of the complaint, materials incorporated into the complaint by reference, and facts of which the court may take judicial notice.

United States District Court
For the Northern District of California

1  <u>Id.</u> at 1061.  However, the court need not accept legal

2  conclusions, including "threadbare recitals of the elements of a

3  cause of action, supported by mere conclusory statements."  <u>Iqbal</u>,

4  556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 555).

5      When granting a motion to dismiss, the court is generally

6  required to grant the plaintiff leave to amend, even if no request

7  to amend the pleading was made, unless amendment would be futile.

8  <u>Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.</u>, 911

9  F.2d 242, 246-47 (9th Cir. 1990).  In determining whether

10 amendment would be futile, the court examines whether the

11 complaint could be amended to cure the defect requiring dismissal

12 "without contradicting any of the allegations of [the] original

13 complaint."  <u>Reddy v. Litton Indus., Inc.</u>, 912 F.2d 291, 296 (9th

14 Cir. 1990).

15                          DISCUSSION

16      Both Defendants seek to dismiss all claims against them.

17      A.   First Cause of Action: Fraud

18      Plaintiffs allege that BOA[4] "knowingly and recklessly made

19 false and misleading statements that Plaintiffs relied on to their

20 detriment and were damaged thereby."  1AC ¶ 33.  Plaintiffs base

21 their fraud claim on "the statements by Ms. Tipton that their loan

22 would be re-modified in the future."  Pls.' Opp. 6.[5]

23

24

25      [4] Plaintiffs do not bring a cause of action for fraud against
   Defendant BNYM.
26      [5] In their Opposition to the Motion to Dismiss, Plaintiffs
   abandon any fraud claims based on their 2007 loan origination or
27 the terms of the 2009 modification.  The Court, therefore,
   addresses only those claims related to Ms. Tipton's alleged
28 statements.

                            7

**United States District Court**
For the Northern District of California

BOA argues that Plaintiffs' cause of action for fraud should be dismissed for several reasons.  First, BOA argues that the claim is time-barred.  Second, BOA argues that Plaintiffs' claim is inadequately plead under Rule 9(b).  Lastly, BOA argues that Plaintiffs' fraud claim is not actionable under the statute of frauds.  The Court GRANTS BOA's motion to dismiss this cause of action for the reasons stated below.

1.   Statute of Limitations

In the case of fraud or mistake, the statute of limitations is three years after the fraud or mistake has been discovered. Cal. Civ. Proc. Code § 338(d).  "The cause of action in that case is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." Id.  "Under the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her." Jolly v. Eli Lilly & Co., 44 Cal. 3d 1103, 1110 (1988).  "In order to rely on the discovery rule for delayed accrual of a cause of action, '[a] plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence.'" Fox v. Ethicon Endo-Surgery, Inc., 35 Cal. 4th 797, 808 (2005) (citation omitted).  "In order to adequately allege facts supporting a theory of delayed discovery, the plaintiff must plead that, despite diligent investigation of the circumstances of the injury, he or she could not have reasonably discovered facts supporting

United States District Court
For the Northern District of California

1  the cause of action within the applicable statute of limitations

2  period."  Id. at 809.

3        BOA argues that "Plaintiffs cannot rely on the delayed

4  discovery rule to toll the applicable statute of limitations

5  because they do not allege diligence."  BOA's Reply Pls.' Opp.

6  Mot. Dismiss 1.  The Court disagrees.  Plaintiffs allege that

7  beginning in 2011 they repeatedly told BOA representatives about

8  Ms. Tipton's statement.  They further allege that, despite their

9  repeated assertions, they were not told until 2012 that Ms.

10 Tipton's statement promising a favorable 2011 loan modification

11 was false.  Plaintiffs filed this suit in July 2013.  Plaintiffs

12 have plead sufficient facts that, if true, would delay the running

13 of the statute of limitations for fraud to the date of discovery

14 in 2012.  Accordingly, the Court declines to dismiss this claim

15 based on the statute of limitations.

16        2.  Rule 9(b)

17        Plaintiffs allege that BOA defrauded them by "knowingly and

18 recklessly mak[ing] false and misleading statements that

19 Plaintiffs relied on to their detriment[.]"  1AC ¶ 33.

20 Specifically, Plaintiffs allege Ms. Tipton, as a BOA

21 representative, assured them that BOA would modify their 2009 loan

22 again in two years.  Plaintiffs allege that Ms. Tipton made those

23 statements knowing they were false.  They also allege that they

24 relied on Ms. Tipton's assurance to their detriment.  Id. at

25 ¶¶ 19, 35.  BOA argues that "Plaintiff's [sic] allegations fall

26 woefully short of meeting th[e] stringent standard [for pleading

27 fraud] against corporate defendants."  BOA's Mot. Dismiss 6.

28

**United States District Court**
For the Northern District of California

"In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b).  "Therefore, in an action based on state law, while a district court will rely on state law to ascertain the elements of fraud that a party must plead, it will also follow Rule 9(b) in requiring that the circumstances of the fraud be pleaded with particularity." Marolda v. Symantec Corp., 672 F. Supp. 2d 992, 996 (N.D. Cal. 2009); see also Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009).  "[W]hen the claim is 'grounded in fraud,' the pleading of that claim as a whole is subject to Rule 9(b)'s particularity requirement." Marolda, 672 F. Supp. 2d at 997 (citing Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1104).  A plaintiff must describe the alleged fraud in specific enough terms "to give defendants notice of the particular misconduct so that they can defend against the charge." Kearns, 567 F.3d at 1124.  Rule 9(b) requires the plaintiff to allege "the who, what, when, where, and how" of the alleged fraudulent conduct.  Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997). "The requirement of specificity in a fraud action against a corporation requires the plaintiff to allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." Tarmann v. State Farm Mut. Auto. Ins. Co., 2 Cal. App. 4th 153, 157 (1991).

Plaintiffs have not plead with particularity their fraud claim against BOA in regard to the 2009 future loan modification representation.  "The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false

10

United States District Court
For the Northern District of California

representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." Lazar v. Superior Court, 12 Cal. 4th 631, 638 (1996).

Plaintiffs allege that, in September 2009, Ms. Tipton spoke to Joseph Amacker and told him, "Once the dust settles, we will definitely re-modify this for you and get you a better loan in the future, in about two years." They also allege that Ms. Tipton knew her statement was false when she made it and that she made the statement to induce Plaintiffs not to file suit or speak with the media. Plaintiffs further allege that they reasonably relied on Ms. Tipton's statement because she was a BOA representative. Plaintiffs have not alleged, however, that they have been damaged as a result of Ms. Tipton's statement. They do not allege that they could have obtained a more favorable loan modification in 2009 from another lender or by virtue of litigation or publicity. Instead they say they had to accept the proposed modification. They do not allege that BOA since has denied them another loan modification.

Plaintiffs' cause of action for fraud against BOA is not sufficiently plead under Rule 9(b). Accordingly, the Court GRANTS BOA's motion to dismiss this claim. Plaintiffs are granted leave to amend to remedy the deficiencies noted above if they can do so truthfully and without contradicting the allegations in their prior pleadings.

3.   Statute of Frauds

Although this claim is dismissed under Rule 9(b), BOA also argues that the claim should be dismissed due to the statute of

11

frauds.  Plaintiffs allege, albeit indirectly, that Ms. Tipton's statements guaranteeing a future, more favorable, loan modification constituted an oral agreement between Plaintiffs and BOA.  According to Plaintiffs, this statement was made "with the intent to induce Plaintiffs into the modification agreement in order to prevent them from continuing to expose the bank's misconduct to the media and seeking to litigate for the misconduct[.]"  1AC ¶ 38.  BOA argues that "even assuming arguendo Plaintiffs' ambiguous references to [BOA's] promises are supported by facts, such an oral promise relates to real property interests and, thus, is barred by the statute of frauds."  BOA's Mot. Dismiss 10.

"An agreement for . . . the sale of real property, or of an interest therein" is "invalid, unless [it], or some note or memorandum thereof, [is] in writing and subscribed by the party to be charged or by the party's agent[.]"  Cal. Civ. Code § 1624(a)(3).  "A contract coming within the statute of frauds is invalid unless it is memorialized by a writing subscribed by the party to be charged or by the party's agent."  Chavez v. Indymac Mortg. Servs., 219 Cal. App. 4th 1052, 1057 (2013) (citations omitted).  "An agreement to modify a contract that is subject to the statute of frauds is also subject to the statute of frauds." Id.; see also Cal. Civ. Code § 1698.

While "California courts have held that forbearance agreements altering a mortgage are covered by the statute of frauds," Chavez, 219 Cal. App. 4th at 1057 (citation omitted), Plaintiffs do not allege that Ms. Tipton's promise altered their note or deed of trust.  They also do not allege that Ms. Tipton's

12

United States District Court
For the Northern District of California

promise itself was a modification of the loan.  Instead,
Plaintiffs allege that Ms. Tipton made a promise to modify the
loan as soon as 2011.  That promise did not alter the 2009 loan
agreement and, hence, is not subject to the statute of frauds.

Accordingly, the Court's dismissal of this claim is not based
on the statute of frauds.

B.   Second Cause of Action: Promissory Estoppel

Here, Plaintiffs rely on the same facts alleged under their
fraud cause of action, namely that BOA failed to keep a 2009
promise to re-modify their loan favorably.  As a result,
Plaintiffs request that BNYM, as BOA's "successor-in-interest" be
estopped from preventing Plaintiffs "from modifying their loan and
from proceeding with a foreclosure against Plaintiffs[.]"  1AC
¶ 45.  Defendants argue that Plaintiffs' allegations do not
sufficiently plead the elements required under the doctrine of
promissory estoppel.  The Court GRANTS Defendants' motion to
dismiss this cause of action for the reasons stated below.

"The purpose of [promissory estoppel] is to make a promise
that lacks consideration (in the usual sense of something
bargained for and given in exchange) binding under certain
circumstances."  Cockrell v. Wells Fargo Bank, N.A., 2013 WL
3830048, at *4 (N.D. Cal.) (citation omitted). "Promissory
estoppel requires: (1) a promise that is clear and unambiguous in
its terms; (2) reliance by the party to whom the promise is made;
(3) the reliance must be reasonable and foreseeable; and (4) the
party asserting the estoppel must be injured by his or her
reliance."  Id.  "Under this doctrine a promisor is bound when he
should reasonably expect a substantial change of position, either

**United States District Court**
For the Northern District of California

by act or forbearance, in reliance on his promise, if injustice can be avoided only by its enforcement." <u>Panaszewicz v. GMAC Mortg., LLC</u>, 2013 WL 2252112, at *4 (N.D. Cal) (citation omitted).

Plaintiffs' promissory estoppel claim fails for several reasons.  First, it fails because the alleged promise was not clear and unambiguous.  Plaintiffs allege that Ms. Tipton promised to "definitely re-modify" their loan and "get [them] a better loan in the future, in about two years."  1AC ¶¶ 19, 35.  "Better" is ambiguous, and "about two years" is indefinite.  The only part of Ms. Tipton's promise that is clear and unambiguous is that a loan modification would occur in the future.

Plaintiffs allege that they were injured due to their reliance on Ms. Tipton's promise because they ceased pursuing litigation and exercising their right to free speech, believing they would receive a "favorable" loan modification in the future. Plaintiffs allege that they were unhappy with the terms of the 2009 modification, and suggest that they would not have accepted the 2009 loan modification if not for Ms. Tipton's promise.  But they also state that "they felt they had "no other option but to accept the modification for the time being[.]"  Compl. ¶ 20. Plaintiffs cannot allege that accepting the 2009 modification was in reliance on Ms. Tipton's representations if Plaintiffs also allege they felt they had no other choice but to accept, no matter what Ms. Tipton had promised.  Further, Plaintiffs do not allege that they could have obtained a better loan modification in 2009 through litigation or other means.  Finally, Plaintiffs have not plead that Defendants have denied them a loan modification.

**United States District Court**
For the Northern District of California

Accordingly the Court GRANTS Defendants' motions to dismiss this cause of action.  Plaintiffs are granted leave to amend to remedy the deficiencies noted above if they can do so truthfully and without contradicting the allegations in their prior pleadings.

C.   Third Cause of Action: Negligent Misrepresentation

Plaintiffs rely on the same facts alleged under their fraud and promissory estoppel claims to contend, in the alternative, that Ms. Tipton's statements negligently misrepresented the likelihood of a loan modification in the future.[6]  In this claim, Plaintiffs do not allege that Ms. Tipton knowingly deceived them, but rather that she made the misrepresentation with no reasonable grounds to believe that what she was saying was true.

BOA argues that Plaintiffs' claim for negligent misrepresentation fails for three reasons.  First, BOA argues that Plaintiffs' action for negligent misrepresentation is time-barred. Second, BOA argues that Plaintiffs fail to state a claim for negligent misrepresentation.  Finally, BOA argues that Plaintiffs have not sufficiently alleged reliance or damages.  The Court GRANTS BOA's motion to dismiss this cause of action for the reasons stated below.

1.   Statute of Limitations

When a cause of action alleges negligent misrepresentation, the statute of limitations is two years.  <u>Ventura Cnty. Nat. Bank</u>

---

[6] Plaintiffs request that the Court ignore the cause of action for negligent misrepresentation against Defendant BNYM. The Court GRANTS that request and dismisses that claim without leave to amend.

United States District Court
For the Northern District of California

v. Macker, 49 Cal. App. 4th 1528 (1996); see also Cal. Code Civ. Proc. § 339.  As discussed above with respect to the fraud claim, the delayed discovery rule may apply.  Fox, 35 Cal. 4th at 808.

As in the fraud claim, Plaintiffs allege that beginning in 2011 they repeatedly told BOA representatives about Ms. Tipton's statement and were not told until 2012 that Ms. Tipton's statement regarding a promised loan modification was false.  Plaintiffs filed this suit in July 2013.  Plaintiffs have plead sufficient facts that, if true, would delay the running of the statute of limitations to the date of discovery in 2012.  Accordingly, the Court declines to dismiss this claim based on the statute of limitations.

2.   Rule 9(b)

"The elements of negligent misrepresentation are similar to intentional fraud except for the requirement of scienter; in a claim for negligent misrepresentation, the plaintiff need not allege the defendant made an intentionally false statement, but simply one as to which he or she lacked any reasonable ground for believing the statement to be true."  Charnay v. Cobert, 145 Cal. App. 4th 170, 184-85 (2006) (citing Bily v. Arthur Young & Co., 3 Cal. 4th 370, 407–408 (1992)); see also Alliance Mortg. Co. v. Rothwell, 10 Cal. 4th 1226, 1239, fn. 4 (1995) (negligent misrepresentation is a species of the tort of deceit and like fraud, requires a misrepresentation, justifiable reliance and damage).

"The Ninth Circuit has not yet decided whether Rule 9(b)'s heightened pleading standard applies to a claim for negligent misrepresentation, but most district courts in California hold

that it does." Villegas v. Wells Fargo Bank, N.A., 2012 WL
4097747, at *7 (N.D. Cal.)  See, e.g., Errico v. Pac. Capital
Bank, N.A., 753 F. Supp. 2d 1034, 1049 (N.D. Cal. 2010)
("[N]egligent misrepresentation 'sounds in fraud' and is subject
to Rule 9(b)'s heightened pleading standard");  In re Easysaver
Rewards Litig., 737 F. Supp. 2d 1159, 1176 (S.D. Cal. 2010);
Neilson v. Union Bank of Cal., N.A., 290 F. Supp. 2d 1101, 1141
(C.D. Cal. 2003); but see Petersen v. Allstate Indem. Co., 281
F.R.D 413 (C.D. Cal. 2012) (finding that Rule 9(b) does not apply
to negligent misrepresentation claims); Howard v. First Horizon
Home Loan Corp., 2013 WL 6174920, at *5 (N.D. Cal.) ("negligent
misrepresentation requires a showing that a defendant failed to
use reasonable care -— 'an objective standard [that] does not
result in the kind of harm that Rule 9(b) was designed to
prevent'" (citing Petersen, 281 F.R.D. at 417-418)); Bernstein v.
Vocus, Inc., 2014 WL 3673307, at *5 (N.D. Cal.) ("The Court finds
the reasoning of [Petersen and Howard] persuasive, and joins in
their holdings that negligent misrepresentation claims are not
subject to the heightened pleading standards of Rule 9(b).").

Because Plaintiffs' claim for negligent misrepresentation is
based on the same circumstances as their fraud claim, they must
meet the heightened pleading requirements of Rule 9(b).[7]

Plaintiffs fail to allege facts to support a negligent
misrepresentation claim for the same reasons they failed to do so

---

[7] BOA argues that Plaintiffs fail to show that it owed them a
duty of care.  The duty of care is not relevant to a negligent
misrepresentation claim because it is a species of fraud, not
common-law negligence.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

in their claims for fraud and promissory estoppel. As discussed above, Plaintiffs do not allege that they could have obtained a more favorable loan modification in 2009 from another lender or by virtue of litigation or publicity. Instead, they say they had to accept the proposed modification. They also do not allege that BOA since has denied them another loan modification.

Accordingly, the Court dismisses this claim because Plaintiffs have failed to state, with particularity, facts to support reliance upon the negligent misrepresentation and resulting damages. Plaintiffs are granted leave to amend to remedy the deficiencies noted above if they can do so truthfully and without contradicting the allegations in their prior pleadings.

D.    Fourth Cause of Action: Violation of the Uniform Fraudulent Transfer Act

Plaintiffs allege that while they were creditors of BOA "by way of their pending allegations against [BOA] for damages," BOA "transferred Plaintiffs' Deed of Trust, and all benefits thereunder" to BNYM in violation of the Uniform Fraudulent Transfer Act (UTFA). 1AC ¶ 56. As a result, Plaintiffs allege that they were deprived of their "right to seek claims for specific performance and for damages against" BOA. Id. at ¶ 57.

Defendants argue that this cause of action is time-barred. Defendants also argue that Plaintiffs fail to provide facts to support the claim that they were creditors of BOA based on a contingent claim for damages by way of pending allegations. The Court GRANTS Defendants' motion to dismiss this claim for the reasons stated below.

United States District Court
For the Northern District of California

1.   Statute of Limitations

"A cause of action with respect to a fraudulent transfer or obligation under [UTFA] is extinguished . . . within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant."  Cal. Civ. Code § 3439.09.  According to judicially noticed documents, BOA transferred the note to BNYM in 2011.  Plaintiffs filed this complaint in 2013.  Plaintiffs have therefore plead sufficient facts to show that their UFTA claim is within the statute of limitations.  Accordingly, the Court declines to dismiss this claim based on the statute of limitations.

2.   Failure to State a Claim

The UFTA "permits defrauded creditors to reach property in the hands of a transferee."  Mejia v. Reed, 31 Cal. 4th 657, 663 (2003).  Transfers can be fraudulent "both as to present and future creditors."  Id. at 664.  A transfer can be invalid if a debtor transfers with the "actual intent to hinder, delay, or defraud any creditor of the debtor."  Cal. Civ. Code § 3439.04(a)(1).  "Whether a conveyance was made with fraudulent intent is a question of fact, and proof often consists of inferences from the circumstances surrounding the transfer." Filip v. Bucurenciu, 129 Cal. App. 4th 825, 834 (2005).  In determining a debtor's intent, courts may consider whether "the debtor retained possession or control of the property transferred after the transfer;" whether "before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;" and whether "the value of the consideration received

19

United States District Court
For the Northern District of California

by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred."  Cal. Civ. Code § 3439.04(b)(2), (4) and (8).  "There is no minimum number of factors that must be present before the scales tip in favor of finding actual intent to defraud.  This list of factors is meant to provide guidance to the trial court, not compel a finding one way or the other."  In re Still, 393 B.R. 896, 917 (Bankr. C.D. Cal. 2008) aff'd, 2014 WL 2066714 (9th Cir. 2014) (citation omitted).

Plaintiffs allege facts under only two of the eleven factors that would support that the loan transfer from BOA to BYNM was made with the intent to hinder, delay or defraud Plaintiffs.  First, Plaintiffs allege that BOA retained control of the property because it remained the servicer of the debt after the transfer.  Second, Plaintiffs allege BOA made the transfer to BNYM after BOA became aware that Plaintiffs had retained HERA counsel.

Plaintiffs fail to allege facts to support any of the remaining nine factors.  Plaintiffs do not allege that the transfer from BOA to BNYM was to an insider.  They do not allege that the transfer had been concealed, nor do they allege that the transfer included substantially all of BOA's assets.  Plaintiffs do not allege that BOA absconded, nor do they allege that BOA removed or concealed assets.  Plaintiffs do not allege that the value of the consideration received by BOA was not reasonably equivalent to the value of the asset transferred.  They do not allege that the transfer happened shortly before or shortly after a substantial debt was incurred; indeed they allege that the transfer occurred approximately two years after BOA was allegedly

20

put on notice that Plaintiffs might file a lawsuit.  Plaintiffs do not allege that BOA transferred the essential assets of a business, nor do they allege that the transfer was to a lienholder who then transferred to an insider of BOA.

On balance, Plaintiffs have failed to allege sufficient facts to raise an inference that BOA had the intent to hinder, delay or defraud Plaintiffs through the transfer of their loan to BNYM. Accordingly, the Court GRANTS Defendants' motions to dismiss this cause of action.  Plaintiffs are granted leave to amend to remedy the deficiencies noted above if they can do so truthfully and without contradicting the allegations in their prior pleadings.

E.    Fifth Cause of Action: Violation of Business and Professions Code § 17200 et seq. (Unfair Competition Law)

Plaintiffs allege that "Defendants' fraud, inducement of Plaintiffs' detrimental reliance, and negligent misrepresentations to Plaintiffs constitute unfair business practices[.]"  1AC ¶ 63. They allege that Defendants' conduct was unfair in that it "induce[d] a borrower into a loan agreement through misrepresentations" and "then place[d] [Plaintiffs] into foreclosure based on the fraudulent loan agreement."  1AC ¶ 64. In their opposition, however, Plaintiffs disclaim allegations regarding their original loan and pursue only their claim related to the promised future modification.

Defendants argue that Plaintiffs' claim under the Unfair Competition Law (UCL) fails for several reasons.  First, Defendants argue that it is time-barred.  Second, Defendants argue that Plaintiffs lack standing under the UCL because they have not suffered an injury in fact and have not lost money or property as

a result of the claimed violations.  Lastly, Defendants argue that
Plaintiffs have failed to differentiate between Defendants as to
how each has caused Plaintiffs harm.  The Court GRANTS Defendants'
motions to dismiss this cause of action for the reasons stated
below.

    1.   Statute of Limitations

    "Any action to enforce any cause of action pursuant to [the
UCL] shall be commenced within four years after the cause of
action accrued."  However, as discussed above with respect to the
fraud claim, the delayed discovery rule may apply.  Fox, 35 Cal.
4th at 808.  As in the fraud claim, Plaintiffs have plead
sufficient facts that, if true, would delay the running of the
statute of limitations to the date of discovery in 2012.
Accordingly, the Court declines to dismiss this claim based on the
statute of limitations.

    2.   Unfair Business Practices

    The UCL prohibits "any unlawful, unfair or fraudulent
business act."  Cal. Bus. & Prof. Code § 17200 et seq. Because
section 17200 is written in the disjunctive, it establishes three
types of unfair competition.  Davis v. Ford Motor Credit Co., 179
Cal. App. 4th 581, 593 (2009).  Therefore, a practice may be
prohibited as unfair or deceptive even if it is not unlawful and
vice versa.  Podolsky v. First Healthcare Corp., 50 Cal. App. 4th
632, 647 (1996).  Plaintiffs only allege an "unfair business
practice" claim.  Compl. ¶¶ 61-69.

    The California Supreme Court has not established a definitive
test to determine whether a business practice is unfair under the
UCL.  See Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20

United States District Court
For the Northern District of California

22

**United States District Court**
For the Northern District of California

Cal. 4th 163, 187 n. 12 (1999) (stating that the test for unfairness in cases involving business competitors is 'limited to that context' and does not 'relate[ ] to actions by consumers.'). California courts of appeal have applied three different tests to evaluate claims by consumers under the UCL's unfair practices prong. Drum v. San Fernando Valley Bar Ass'n, 182 Cal. App. 4th 247, 256 (2010).

Under one test, a consumer must allege a "violation or incipient violation of any statutory or regulatory provision, or any significant harm to competition." Drum, 182 Cal. App. 4th at 256. The "public policy which is a predicate to a consumer unfair competition action under the 'unfair prong' of the UCL must be tethered to specific constitutional, statutory, or regulatory provisions." Id.

Under the second test, the "unfair prong" requires a consumer to plead that (1) a defendant's conduct "is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers" and (2) "the utility of the defendant's conduct" is outweighed by "the gravity of the harm to the alleged victim." Id. at 257 (citing Smith v. State Farm Mut. Auto. Ins. Co., 93 Cal. App. 4th 700, 718-719 (2001)).

The third test, which is based on the Federal Trade Commission's definition of unfair business practices, requires that, as a result of unfair conduct, "(1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably

have avoided." Id. (citation and internal quotation marks omitted).

In Lozano v. AT&T Wireless Serv., Inc., 504 F.3d 718, 736 (9th Cir. 2007), the Ninth Circuit endorsed the tethering test or the balancing test and declined "to apply the FTC standard in the absence of a clear holding from the California Supreme Court." See Ferrington v. McAfee, Inc., 2010 WL 3910169, at *12 (N.D. Cal. 2010) ("[p]ending resolution of this issue by the California Supreme Court, the Ninth Circuit has approved the use of either the balancing or the tethering tests in consumer actions, but has rejected the FTC test") (citation omitted); I.B. ex rel. Fife v. Facebook, Inc., 905 F. Supp. 2d 989, 1010-11 (N.D. Cal. 2012).

Under either the tethering test or the balancing test, Plaintiffs fail to plead sufficient facts to support a claim under the unfairness prong of the UCL. Plaintiffs have not sufficiently "tethered" their UCL claim to any "specific constitutional, statutory, or regulatory provisions." They have also failed to show how Defendants actions were "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," especially because, as discussed above, they have failed to allege sufficient facts to support the allegation that they were harmed due to reliance on Ms. Tipton's statements.

Accordingly, the Court GRANTS Defendants' motions to dismiss this cause of action. Plaintiffs are granted leave to amend to remedy the deficiencies noted above if they can do so truthfully and without contradicting the allegations in their prior pleadings.

F. BNYM's Motion to Strike

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12. BNYM moves to strike three paragraphs from the 1AC, all of which reference punitive damages: 1AC ¶¶ 41, 60, and Prayer ¶ 7. Plaintiffs never stated a cause of action against BNYM for fraud and they abandoned their negligent misrepresentation cause of action against BNYM. Plaintiffs have not, therefore, brought any cause of action against BNYM for which punitive damages might be appropriate. Accordingly, the Court GRANTS BNYM's motion to strike without leave to amend.

CONCLUSION

For the reasons set forth above, the Court GRANTS Defendants' motions to dismiss. Within fourteen days of the date of this order, Plaintiffs may file an amended complaint to remedy the deficiencies identified above. Plaintiffs may not include punitive damages claims against BNYM nor should they allege facts relevant to punitive damages against BNYM. They may not add further claims or allegations not authorized by this order.

If Plaintiffs file an amended complaint, Defendants shall respond to it within fourteen days after it is filed. If Defendants file a motion to dismiss, Plaintiffs shall respond to the motion within fourteen days after it is filed. Plaintiffs must file a brief that responds only to the arguments raised in Defendants' motion. If Plaintiffs file an opposition that is inapplicable to this case or does not respond to Defendants' arguments, the Court will consider the motion to be unopposed and will grant it. Defendants' reply, if necessary, shall be due

seven days thereafter.   Any motion to dismiss will be decided on the papers.

IT IS SO ORDERED.

Dated:   9/24/2014                          

                                            CLAUDIA WILKEN
                                            United States District Judge